# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| MICHAEL ALLEN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-14-1424-HE |
| | ) |
| CAROLYN W. COLVIN, | ) |
| Acting Commissioner of the | ) |
| Social Security Administration, | ) |
| | ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

Plaintiff Michael Allen brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying Plaintiff's application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383f.[1] The Commissioner has answered and filed the administrative record.[2]

Chief United States District Judge Joe Heaton has referred this matter to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b) and Rule 72(b) of the Federal Rules of Civil Procedure. For the reasons set forth below, the undersigned recommends that the Commissioner's decision be affirmed.

---

[1] Plaintiff also filed a concurrent application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, which the Commissioner denied. R. 66-68, 162-63. Plaintiff has not appealed that determination.

[2] With the exception of the administrative record, references to the parties' filings use the page numbers assigned by the Court's electronic filing system.

## PROCEDURAL HISTORY

Plaintiff protectively filed his application for SSI on June 28, 2012, alleging a disability onset date of January 1, 2007. R. 164-70, 188-90. Following denial of his application initially and on reconsideration, Plaintiff attended a hearing before an Administrative Law Judge ("ALJ"), who issued an unfavorable decision on October 3, 2013. R. 14-23, 25-40, 41-44, 70-73, 75-76. The SSA Appeals Council denied Plaintiff's request for review, making the ALJ's unfavorable decision the final decision of the Commissioner. R. 1-5; *see also* 20 C.F.R. § 416.1481. This action for judicial review followed.

## ADMINISTRATIVE DECISION

The Commissioner uses a five-step sequential evaluation process to determine eligibility for disability benefits. *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009); 20 C.F.R. § 416.920(a)(4). At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since June 28, 2012, the application date. R. 16; *see* 20 C.F.R. § 416.971. At step two, the ALJ determined that Plaintiff had the nonsevere impairments of hypertension, hyperlipidemia, chest pain syndrome NOS, anxiety NOS, and depression NOS. R. 16-18. The ALJ found that Plaintiff had the following severe impairments:

> a history of degenerative disc disease/cervical spondylosis of his cervical spinal region post 1996 fusion surgery, a history of degenerative disc disease of his lumbar spinal region status post back surgery, a history of carpal tunnel syndrome status-post wrist surgery, and peripheral neuropathy/trigeminal nerve disorder.

R. 18; *see* 20 C.F.R. § 416.920(c). At step three, the ALJ determined that Plaintiff's impairments did not meet or equal any of the presumptively disabling impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. 18; *see* 20 C.F.R. § 416.920(d).

The ALJ next assessed Plaintiff's residual functional capacity ("RFC") based on all of his impairments. R. 19-21; *see* 20 C.F.R. § 416.920(a)(4)(iv). The ALJ found that Plaintiff had the RFC to perform "light work," subject to the following additional limitations:

> lifting/carrying 10 pounds frequently and 20 pounds occasionally; occasionally pushing and pulling with [his] upper and lower extremities; sitting 6 hours in an 8-hour workday; standing/walking 6 hours in an 8-hour workday; frequently balancing; occasionally climbing stairs and ramps, stooping, kneeling, and crouching; and never crawling or climbing ladders, ropes, or scaffolds. He has no manipulative, visual, communication, or environmental limitations.

R. 19; *see* 20 C.F.R. § 416.967(b) (defining "light work"). At step four, the ALJ found that Plaintiff was unable to perform any past relevant work and that transferability of job skills was not a material issue. R. 21-22; *see* 20 C.F.R. §§ 416.965, .968.

At step five, the ALJ considered whether there are jobs existing in significant numbers in the national economy that Plaintiff—in view of his age, education, work experience, and RFC—could perform. Taking into consideration the testimony of a vocational expert ("VE") regarding the degree of erosion to the unskilled light occupational base caused by Plaintiff's additional limitations, the ALJ concluded that Plaintiff could perform light, unskilled occupations such as Cashier II, Laundry Worker, and Packer, all of which offer jobs that exist in significant numbers in the national economy. R. 22-23; *see* 20 C.F.R. § 416.945(a)(5)(ii). On this basis, the ALJ concluded

3

that Plaintiff had not been under a disability, as defined in the Social Security Act, from June 28, 2012, through the date of the decision. R. 23; *see* 20 C.F.R. § 416.920(g).

STANDARD OF REVIEW

Judicial review of the Commissioner's final decision is limited to determining whether factual findings are supported by substantial evidence in the record as a whole and whether correct legal standards were applied. *Poppa v. Astrue*, 569 F.3d 1167, 1169 (10th Cir. 2009). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003) (internal quotation marks omitted). "A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Branum v. Barnhart*, 385 F.3d 1268, 1270 (10th Cir. 2004) (internal quotation marks omitted). The court "meticulously examine[s] the record as a whole," including any evidence that may undercut or detract from the administrative law judge's findings, "to determine if the substantiality test has been met." *Wall*, 561 F.3d at 1052 (internal quotation marks omitted). While the court considers whether the Commissioner followed applicable rules of law in weighing particular types of evidence in disability cases, the court does not reweigh the evidence or substitute its own judgment for that of the Commissioner. *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008).

ANALYSIS

Plaintiff alleges that the ALJ's determination was not supported by substantial evidence for various reasons, which are addressed in turn. *See* Pl.'s Br. (Doc. No. 15) at 3; Pl.'s Reply Br. (Doc. No. 23) at 1-7.

A. *The ALJ's Consideration of Plaintiff's Mental Impairments*

Plaintiff's first claim is that the ALJ did not properly complete the "special technique" applicable to the evaluation of the severity of mental impairments. *See* Pl.'s Br. at 3; 20 C.F.R. § 416.920a; *Wells v. Colvin*, 727 F.3d 1061, 1068 (10th Cir. 2013). The undersigned disagrees.

> The Commissioner follows a special technique to evaluate the severity of mental impairments and their effect on the claimant's ability to work. 20 C.F.R. § 416.920a(a). In applying the special technique, the ALJ must first decide whether the claimant has a medically determinable mental impairment. *Id.* § 416.920a(b)(1). . . .
>
> The ALJ must next rate the degree of the functional limitation resulting from the claimant's medically determinable mental impairments in four broad functional areas: "activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation." *Id.* § 416.920a(c)(3). To complete this step, the ALJ uses a five-point scale, rating the degree of limitation in the first three areas as either none, mild, moderate, marked, or extreme; and the limitation in the fourth area using a numerical scale of either none, one or two, three, or four or more. *Id.* § 416.920a(c)(4). The ALJ's degree-of-limitation ratings then inform his conclusions at steps two and three of the five-step analysis. *Id.* § 416.920a(d).

*Wells*, 727 F.3d at 1068 (alteration and citations omitted). If the ALJ rates the degree of claimant's limitations in the first three functional areas as "none" or "mild," and "none" in the fourth area, then the ALJ will generally conclude that the mental impairments are not severe, unless the evidence otherwise indicates more than a minimal limitation in the

5

claimant's ability to do basic work activities. 20 C.F.R. § 416.920a(d)(1); *see id.* § 416.921.

Here, the ALJ found at step two that Plaintiff had the medically determinable mental impairments of anxiety NOS ("not otherwise specified") and depression NOS. R. 16. As required by the "special technique," the ALJ rated Plaintiff's limitations in the various functional areas, finding that Plaintiff's impairments imposed (1) mild restrictions in activities of daily living; (2) mild difficulties in maintaining social functioning; (3) mild difficulties in maintaining concentration, persistence, or pace; and (4) no repeated episodes of decompensation, then determined the impairments to be nonsevere. R. 18; *see also Wells*, 727 F.3d at 1068; 20 C.F.R. § 416.920a(c)(3).

The ALJ recited relevant evidence and set forth "pertinent findings and conclusions based on the technique" as well as "the significant history . . . and the functional limitations that were considered in reaching [his] conclusion about the severity of [Plaintiff's] mental impairment(s)." *See* 20 C.F.R. § 416.920a(e)(4). Specifically, the ALJ discussed the level of severity of Plaintiff's mental impairments, noting that there was "no showing" that Plaintiff's anxiety and depression had "resulted in frequent or prolonged acute episodes requiring hospital admissions, emergency room treatments, or other crisis treatments." R. 17. The ALJ also noted that the "ongoing medical evaluations by non-mental health specialists" had not found Plaintiff's mental impairments to be of "such severity or intensity as to require prescribed psychotropic medications or referral for treatment or evaluation by [a] psychiatrist or other mental health specialist." R. 17. The ALJ pointed to his "review of the ongoing medical

6

treatment notes and reports of treating and evaluating physicians" showing that Plaintiff "persistently exhibited intact psychiatric functions," and further noted that Plaintiff attributed complaints of deficits in memory, concentration, and persistence to chronic pain and other physiological impairments. R. 17. The ALJ discussed that Plaintiff had not been limited in his ability to participate in his medical treatments, provide medical histories, make medical decisions, or access public facilities and benefits. R. 17. The ALJ also referred to Plaintiff's Function Report and provided multiple examples of activities and functions that Plaintiff performed. R. 17-18. Finally, the ALJ gave "great weight" to the state agency examiner who found that Plaintiff's mental impairment was nonsevere and caused only mild limitations in activities of daily living; maintaining social functioning; and maintaining concentration, persistence, or pace. R. 18; *see* R. 270-83.

Thus, Plaintiff's allegation that "the ALJ simply made conclusions never providing this Court with any understanding of how he came to that conclusion or how the evidence led him to his conclusion regarding the severity of [Plaintiff's] anxiety and depression," Pl.'s Br. at 5, is rejected. *See* R. 16, 17-18; *Branum*, 385 F.3d at 1272-73 (holding that ALJ's analysis of claimant's mental impairments was proper when the ALJ made a specific finding regarding the degree of limitation in each of the four functional areas and set forth the significant history and functional limitations that were considered in determining the severity of claimant's mental impairments).

Plaintiff further asserts that the reasons cited by the ALJ in his application of the special technique are "not the test," emphatically arguing that "consideration of the

amount of *treatment* received by a claimant does not play a role" in determining the severity of a mental impairment. Pl.'s Br. at 5. More than two full pages of Plaintiff's opening brief—including this argument—are taken nearly verbatim from the Tenth Circuit's decision in *Grotendorst v. Astrue*, 370 F. App'x 879 (10th Cir. 2010), without attribution. *Compare* Pl.'s Br. at 5-7, *with Grotendorst*, 370 F. App'x at 883-84.

At issue in *Grotendorst* was a denial of benefits in which the ALJ, rather than following the special technique required for assessing mental impairments, concluded that the claimant's mental impairments were nonsevere based only on an erroneous determination that the claimant had not received treatment during the relevant time period. *Grotendorst*, 370 F. App'x at 882. But that is not what occurred here. As noted, the regulations dictate that the severity of a mental impairment is determined by rating the degree of functional limitations. *See Wells*, 727 F.3d at 1068; 20 C.F.R. § 416.920a(c)(3). In turn, rating the degree of functional limitations requires the ALJ to consider a broad range of evidence:

> (1) Assessment of functional limitations is a complex and highly individualized process that requires us to consider multiple issues and all relevant evidence to obtain a longitudinal picture of your overall degree of functional limitation. We will consider all relevant and available clinical signs and laboratory findings, the effects of your symptoms, and how your functioning may be affected by factors including, but not limited to, chronic mental disorders, structured settings, medication, and other treatment.
>
> (2) We will rate the degree of your functional limitation based on the extent to which your impairment(s) interferes with your ability to function independently, appropriately, effectively, and on a sustained basis. Thus, we will consider such factors as the quality and level of your overall functional performance, any episodic limitations, the amount of supervision or assistance you require, and the settings in which you are

able to function. See 12.00C through 12.00H of the Listing of Impairments in appendix 1 to subpart P of part 404 of this chapter for more information about the factors we consider when we rate the degree of your functional limitation.

20 C.F.R. § 416.920a(c)(1)-(2). Consistently with these requirements, and unlike in *Grotendorst*, the ALJ rated the functional limitations caused by Plaintiff's mental impairments and cited valid and substantial evidence in support of his ratings. *Compare* R. 17-18 (ALJ making specific step-two findings), *with Grotendorst*, 370 F. App'x at 882 ("[T]he ALJ concluded that [plaintiff's] anxiety and depression were not severe without first making the required findings regarding how limited she was in each of the four broad function areas.").

Plaintiff further alleges that the ALJ failed to address Plaintiff's nonsevere mental impairments in determining his RFC, tainting steps four and five of the ALJ's analysis. *See* Pl.'s Br. at 6-7 (arguing that the ALJ "failed to properly even consider mental impairments in his decisions"). It is true that an ALJ "must consider the combined effect of *all* medically determinable impairments, whether severe or not." *Wells*, 727 F.3d at 1069. By extension, a finding of nonseverity at step two "does not permit the ALJ simply to disregard those impairments when assessing [Plaintiff's] RFC and making conclusions at steps four and five." *Id.* at 1068-69.

Here, although the bulk of the ALJ's discussion of the medical evidence relating to Plaintiff's mental impairments occurs in the step-two assessment, the ALJ did not merely rely on the step-two findings to support his RFC determination, or improperly conflate those assessments. With respect to Plaintiff's claims of anxiety and depression, the only

9

medical opinion evidence in the record is that of a state agency psychologist that Plaintiff had a mental disorder that was not severe and caused only mild restrictions in activities of daily living, maintaining social functioning, and maintaining concentration, persistence, or pace. *See* R. 270, 280. Plaintiff in his briefs cites no specific objective evidence—from an acceptable medical source, other medical source, or otherwise—concerning mental impairments or limitations thereon that he contends should have been considered. Rather, the limited evidence in the record supporting these claims is Plaintiff's own complaints of his symptoms. *See, e.g.*, R. 236 (Plaintiff reporting anxiety but seeking treatment for physical rather than mental issues). In formulating Plaintiff's RFC, the ALJ stated that he considered all of Plaintiff's symptoms and all opinion evidence. R. 19. *See generally Wall*, 561 F.3d at 1070 ("Where . . . the ALJ indicates he has considered all the evidence our practice is to take the ALJ at his word." (alteration and internal quotation marks omitted)). Further, the ALJ, referencing the step-two discussion of evidence, noted that Plaintiff had not sought evaluation or treatment to an extent expected with his claimed impairments and "has been persistently described as alert and not exhibiting signs of significant distress." R. 21. Most notably, the ALJ cited the "psychiatric findings" of the state agency psychologist and gave them "great weight." R. 21.[3]

---

[3] Plaintiff does not assert, in any meaningfully developed way, that the RFC analysis regarding Plaintiff's mental impairments was not supported by substantial evidence. *See* Pl.'s Br. at 6-7 (asserting that the ALJ failed to consider "record evidence of limitations due to mental impairments" but not specifying any such evidence or limitations). Because Plaintiff "does not challenge particular aspects of the ALJ's discussion of the evidence, [or] cite to specific evidence in the record that the ALJ should have but did not address," he "has not presented an adequately developed challenge" to whether substantial evidence supports the RFC determination. *See Suttles v. Colvin*, 543 F. App'x

While the discussion was brief, the ALJ considered Plaintiff's mental impairments in making an RFC determination and did not rely on the step-two assessment in place of an RFC analysis. *See Suttles*, 543 F. App'x at 826 (finding proper RFC assessment where ALJ discussed evidence relating to plaintiff's nonsevere mental impairment and, "[s]ignificantly, the ALJ did not make any ancillary statement, like that made by the ALJ in *Wells*, affirmatively suggesting an improper conflation of the step-two and step-four assessments"); *cf. Alvey v. Colvin*, 536 F. App'x 792, 794 (10th Cir. 2013) (finding that ALJ failed to adequately consider plaintiff's nonsevere mental impairments at step four when ALJ apparently conflated the step-two and step-four findings and "did not engage in any analysis" of mental functions or impairments but holding the error harmless "[b]ecause the evidence in this case does not support assessing any functional limitations from mental impairments"); *Wells*, 727 F.3d at 1069 (stating ALJ may not "rely on his step-two findings to conclude that [plaintiff] had no limitation based on her mental impairments").

As an extension of the above arguments, Plaintiff also asserts that the ALJ failed to include in his hypothetical to the VE limitations caused by Plaintiff's nonsevere mental impairments. *See* Pl.'s Br. at 6-7. Because Plaintiff has not shown that additional

---

824, 826 (10th Cir. 2013). Nor can Plaintiff's brief reasonably be construed as arguing that the ALJ's finding of mild functional limitations at step two required the imposition of mental limitations in the RFC at step four. Any such argument would fail in light of the ALJ's reasoned explanations at both steps. *See id.* at 826-27 (holding that ALJ, notwithstanding step-two finding of mild mental limitation, conducted proper RFC assessment where he discussed evidence of depression and then "pointedly omitted" from the RFC any limitation associated with that impairment); *Beasley v. Colvin*, 520 F. App'x 748, 754 (10th Cir. 2013).

limitations should have been included in the RFC, Plaintiff's challenge to the VE hypothetical also fails. *See Barnett v. Apfel*, 231 F.3d 687, 690 (10th Cir. 2000) (holding that VE hypothetical is sufficient if "it contained all of the limitations found to exist by the ALJ"); *Bean v. Chater*, 77 F.3d 1210, 1214 (10th Cir. 1995) (finding ALJ was not required to accept VE's answer to hypothetical questioning that included limitations "claimed by plaintiff but not accepted by the ALJ as supported by the record").

   B. *The ALJ's Consideration of Plaintiff's Physical Impairments*

Plaintiff next argues that the ALJ failed to include in the RFC manipulative limitations, limitations caused by carpal tunnel syndrome, limitations caused by cervical fusion, limitations caused by Plaintiff's reduced range of motion in his neck, and limitations caused by trigeminal nerve disorder with peripheral neuropathy. Pl.'s Br. at 7-8. Plaintiff, however, does not point to record evidence showing that Plaintiff actually experienced such limitations as a result of his severe impairments. *See* Pl.'s Br. at 7-8. The only medical evidence Plaintiff does cite in this regard is a record showing that he had a decrease in muscle mass in his right hand in August 2012. *See* Pl.'s Br. at 7 (citing R. 248). But this medical record includes the notations that "there was no weakness in the hand grip," as well as "no sensory loss; good hand grip strength; [and] normal fine manipulation," thus contradicting Plaintiff's claim of manipulative limitations. R. 248.

   Having independently reviewed the record, the only pertinent evidence of limitations reflected therein is Plaintiff's own hearing testimony and his self-reports to the SSA or medical providers—some of which contradict his current allegations of limitations and much of which was expressly relied upon by the ALJ. *See* R. 16, R. 27-

40 (Plaintiff testifying regarding pain, but also stating: "I've got full motion in my neck," R. 30; R. 31 ("I can use my hands. I will drop a few things. . . . I can probably do some typing, but the next day my hands would probably ache so bad I wouldn't want to possibly."); R. 198-205 (Plaintiff's function report noting pain and some limitations, but also describing numerous daily activities, chores, and self-care); R. 191-97 (Plaintiff's disability report to SSA); R. 216-20 (same); R. 223-27 (same); R. 235-46 (Plaintiff's complaints of pain to nurse practitioner); R. 284-93 (same). In any event, the ALJ recognized Plaintiff's own reports and testimony in his decision, but found them to be "not fully credible." R. 19, 21. Plaintiff does not challenge the ALJ's credibility determination. *See* Pl.'s Br. at 7-8.

Plaintiff further states that the ALJ erred by not assigning any limitations in the RFC based on a physician's finding, not cited by Plaintiff in his brief, that Plaintiff had a reduced range of motion in his neck. *See* Pl.'s Br. at 7-8. The record contains an isolated finding by Juan A. Maldonado, MD, in August 2012 that Plaintiff's neck extension was limited to 35 degrees instead of the full 60, and neck flexion was limited to 30 degrees instead of the full 50. R. 247-48, 249. Importantly, however, Plaintiff has not pointed to any record evidence of *functional limitations* caused by these reduced ranges of motion in 2012 that should have been included in the ALJ's RFC analysis but were not. *See* 20 C.F.R. § 416.929(a) (prescribing that statements of pain or symptoms will not establish disability, as there must be medical evidence to consider along with claimant's statements as well a determination of "the extent to which [claimant's] alleged functional limitations and restrictions" "can reasonably be accepted as consistent with the medical signs and

laboratory findings and other evidence" to decide the claimant's ability to work). Moreover, in his RFC analysis, the ALJ generally discussed Plaintiff's medical records and pointed out that neither treatment and therapies nor prescribed restrictions and limitations indicated that Plaintiff's impairments and/or pain or limitations were acute. R. 20-21. Additionally, in 2013 Plaintiff himself stated that he had "full range of motion in [his] neck," and the ALJ discussed Plaintiff's own evaluation of his self-care, activities, and chores. R. 21, 30.

The evidence relied upon by the ALJ adequately supports the RFC assessment. *See* R. 19-21. It was Plaintiff's burden to provide evidence of the limitations caused by his alleged impairments. *See Flaherty v. Astrue*, 515 F.3d 1067, 1071 (10th Cir. 2007) ("In a social security disability case, the claimant bears the burden to prove [his] disability."); 20 C.F.R. § 416.912(c) (requiring that a claimant "inform [the SSA] about or submit all evidence known to you that relates to whether or not you are . . . disabled"). "The mere presence of a condition is not necessarily disabling. Rather, a condition, alone or in combination with other impairments, must render claimant unable to engage in any substantial gainful employment." *Walters v. Colvin*, 604 F. App'x 643, 648 (10th Cir. 2015) (alterations and internal quotation marks omitted). Absent support in the record for the limitations now claimed by Plaintiff, the ALJ did not err by failing to include those limitations in the RFC assessment. *See Maestas v. Colvin*, 618 F. App'x 358, 361 (10th Cir. 2015) (finding RFC analysis was supported by substantial evidence when plaintiff failed to cite anything "specific in the medical records to support his alleged functional limitations" and ALJ had found that plaintiff's "own assessment of his limitations lacked

credibility"). *See generally* SSR 96-8p, 1996 WL 374184, at *1 ("When there is no allegation of a physical or mental limitation or restriction of a specific functional capacity, and no information in the case record that there is such a limitation or restriction, the [ALJ] must consider the individual to have no limitation or restriction with respect to that functional capacity."). Plaintiff has not shown that the ALJ's RFC assessment was unsupported by substantial evidence or that the ALJ erred by failing to include in the RFC any alleged limitation whose presence was not supported by the record. *See, e.g.*, *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000).

C. *The ALJ's Record Citations*

In concluding his credibility analysis, the ALJ stated: "For the reasons set forth above, the undersigned grants great weight to the physical and psychiatric findings and assessments of the State agency examiners who considered this issue at the initial and reconsideration levels of administrative review (Exs. B-4F, B-11F, and B-12F)." R. 21. Plaintiff argues that his due process rights were violated because the ALJ referenced exhibits B11F and B12F, which do not exist in the administrative record. Pl.'s Br. at 9-10 (citing R. 21); *see* R. 1-298. The Commissioner responds that the citations were a harmless typographical error and Plaintiff's contention that there was "missing evidence" is without merit. Def.'s Br. (Doc. No. 22) at 7 n.7.

Though Plaintiff is correct that there are no exhibits B11F or B12F in the administrative record, it is evident that the ALJ was referring to the State agency's Physical RFC Assessment (Ex. B4F), the state agency's Medical Evaluation/Case Analysis (Ex. B6F), and the state agency's Psychiatric Review Technique (Ex. B7F).

This is a scrivener's error that did not affect the outcome of the case. *See Poppa*, 569 F.3d at 1172 n.5 (dismissing import of ALJ's scrivener's error); *Cochran v. Colvin*, No. CIV-13-1238-F, 2015 WL 1308381, at *6 (W.D. Okla. Mar. 23, 2015) (finding scrivener's error in ALJ decision harmless); *see also Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012) (stating that, in reviewing an ALJ's decision, the court "should, indeed must, exercise common sense" and "cannot insist on technical perfection").

## RECOMMENDATION

Having reviewed the record, the transcript of the administrative hearing, the decision of the ALJ, and the pleadings and briefs of the parties, the undersigned Magistrate Judge recommends that the decision of the Commissioner be AFFIRMED.

## NOTICE OF RIGHT TO OBJECT

The parties are advised of their right to file written objections to this Report and Recommendation in accordance with 28 U.S.C. § 636 and Fed. R. Civ. P. 72. Any such objections must be filed with the Clerk of this Court by February 19, 2016. The parties are further advised that failure to timely object to this Report and Recommendation waives the right to appellate review of the factual and legal issues addressed herein. *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

## STATUS OF REFERRAL

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in this case.

ENTERED this 29th day of January, 2015.

_____
CHARLES B. GOODWIN
UNITED STATES MAGISTRATE JUDGE